United States District Court
Southern District of Texas
**ENTERED**
February 27, 2024
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| DENNIS H.,[1] | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | No. 4:22-cv-3501 |
| | § | |
| KILOLO KIJAKAZI, | § | |
| Acting Commissioner of Social | § | |
| Security, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM AND ORDER

Plaintiff Dennis H. ("Plaintiff") filed this suit seeking judicial review of an administrative decision. Pl.'s Compl., ECF No. 1. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("the Act").[2] The parties filed cross motions for summary judgment. Pl.'s MSJ, ECF No. 17; Def.'s MSJ, ECF No. 21. Plaintiff seeks an order rendering benefits or remand for further consideration, arguing that: (1) "[t]he ALJ's

---

[1] Pursuant to the May 1, 2018 "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court uses only Plaintiff's first name and last initial.

[2] On March 22, 2023, based on the parties' consent, the case was transferred to this Court to conduct all proceedings pursuant to 28 U.S.C. § 636(c). Order Transferring, ECF No. 12.

[residual functional capacity ("RFC")] determination is the product of legal error where it does not account for all of Plaintiff's medically determinable impairments;" and (2) "[t]he ALJ's RFC determination is unsupported by substantial evidence because the ALJ failed to properly evaluate the opinion of the psychological consultative examiner, Dr. Geo Anna Q. Hirshenbaum." ECF No. 17. Commissioner counters that the ALJ's RFC determination is supported by substantial evidence. ECF No. 21. Based on the briefing, the record, and the applicable law, the Court finds that the ALJ appropriately assessed Plaintiff's impairments and the record's medical opinions in determining Plaintiff's RFC. Thus, Commissioner's motion for summary judgment is granted, Plaintiff's motion for summary judgment is denied, and the ALJ's decision is affirmed.

## I.    BACKGROUND

Plaintiff is 53 years old, R. 78, 95[3] and earned his high school diploma and attended one year of college. R. 42. Plaintiff worked as a construction worker and light truck driver. R. 42–45, 70, 121. Plaintiff alleges a disability onset date of September 2, 2019. R. 18, 287, 290. Plaintiff claims he suffers from physical and mental impairments. R. 21, 289.

On December 9, 2020, Plaintiff filed his application for disability insurance benefits and supplemental security income under Titles II and XVI of the Act. R. 18,

---

[3] "R." citations refer to the electronically filed Administrative Record, ECF No. 7.

276–306. Plaintiff based [4] his application on post-traumatic stress disorder, depression, bipolar disorder, stomach ulcers, anxiety disorder, dyslexia, flat feet, and a heart condition. R. 82, 96, 102, 289. The Commissioner denied Plaintiff's claim initially, R. 78–111, and on reconsideration. R. 115–31.

A hearing was held before an Administrative Law Judge ("ALJ"). An attorney represented Plaintiff at the hearing. R. 41. Plaintiff and a vocational expert ("VE") testified at the hearing. R. 42, 70. The ALJ issued a decision denying Plaintiff's request for benefits.[5] R. 15–34. The Appeals Council denied Plaintiff's request for review, upholding the ALJ's decision to deny benefits. R. 1–7.

---

[4] For Plaintiff's disability insurance benefits, the relevant time period is September 2, 2019—Plaintiff's alleged onset date—through June 30, 2026—Plaintiff's last insured date. R. 20. The Court will consider medical evidence outside this period to the extent it demonstrates whether Plaintiff was under a disability during the relevant time frame. *See Williams v. Colvin,* 575 F. App'x 350, 354 (5th Cir. 2014); *Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000).

[5] An ALJ must follow five steps in determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The ALJ here determined Plaintiff was not disabled at step five. R. 28–29. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date through his date last insured. R. 20–21 (citing 20 C.F.R. § 404.1571 *et seq.*, § 416.971 *et seq.*). At step two, the ALJ found that Plaintiff has the following severe impairments: bipolar disorder, depression, substance abuse disorder, and chronic pulmonary disease ("COPD"). R. 21 (citing 20 C.F.R. § 404.1520 (c), 416.920(c)). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the regulations that would lead to a disability finding. R. 21–23 (referencing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). The ALJ found that Plaintiff has the RFC to perform medium work as defined in 20 CFR §§ 404.1567(c) and 416.967(c), except that Plaintiff can understand, remember, and carry out simple instructions, can respond appropriately to supervision and coworkers, and usual work situations, and can deal with changes in a routine work setting. R. 23–27. At step four, the ALJ determined that through the date last insured, Plaintiff was unable to perform his past relevant work. R. 27 (citing 20 C.F.R. §§ 404.1565, 416.965). At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in the national economy that Plaintiff can perform. R. 28–29 (citing 20 C.F.R. §§

Plaintiff appealed the Commissioner's ruling to this Court. ECF No. 1.

## II.     STANDARD OF REVIEW OF COMMISSIONER'S DECISION.

The Social Security Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . ., with or without remanding the cause for a rehearing. The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive[.]

*Id.* Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied. *Id.*; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). It is "more than a scintilla but less than a preponderance." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The "threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

The Court weighs four factors to determine "whether there is substantial

---

404.1569, 404.1569a, 416.969, 416.969a). Therefore, the ALJ concluded that Plaintiff was not disabled. R. 28–29.

evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Conley-Clinton v. Saul*, 787 F. App'x 214, 216 (5th Cir. 2019) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

A reviewing court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of Commissioner, even if the evidence preponderates against Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Even so, judicial review must not be "so obsequious as to be meaningless." *Id.* (quotations omitted). The "substantial evidence" standard is not a rubber stamp for Commissioner's decision and involves more than a search for evidence supporting Commissioner's findings. *Singletary v. Brown*, 798 F.2d 818, 822–23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting Commissioner's findings. *Singletary*, 798 F.2d at 823. "Only where there is a 'conspicuous absence of credible choices or no contrary medical evidence' will we find that the substantial evidence standard has not been met." *Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009).

## III.   DISABILITY INSURANCE BENEFITS AND SUPPLEMENTAL SECURITY INCOME UNDER THE ACT.

The Act permits the payment of insurance benefits to persons who have contributed to the program and who suffer a physical or mental disability. 42 U.S.C. § 423(a)(1)(D). These payments are referred to as disability insurance benefits. The Act also permits Supplemental Security Income ("SSI") payments to the aged, blind, and disabled to assure that their income does not fall below the poverty line. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.110. Although these programs are distinct, applicants must prove "disability" under both sections. *See* 42 U.S.C. § 423(d)(1)(A) (disability insurance); 42 U.S.C. § 1382c(a)(3)(A) (SSI). Both sections define disability using virtually the same language. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

"Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (using "unable" rather than "inability"). A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). "The suffering of some impairment does not establish disability; a

6

claimant is disabled only if he is 'incapable of engaging in any substantial gainful activity.'" *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1987)). "The law and regulations governing the determination of disability are the same for both programs." *Roberts v. Colvin*, 946 F. Supp. 2d 646, 657 (S.D. Tex. 2013) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).

## IV.    THE SHIFTING BURDEN OF PROOF.

The Act places the burden of establishing disability on the claimant. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). To be entitled to disability insurance benefits, a claimant "must show that he was disabled on or before the last day of his insured status." *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981). SSI benefits are dependent on proof of disability and indigence, and a claimant can receive SSI payments once he applies to the program, no matter how long he has been disabled. *Torres v. Colvin*, No. 4:13-cv-2571, 2014 WL 4064002, at *6 (S.D. Tex. Aug. 15, 2014) (citing 42 U.S.C. §§ 1382a, c(a)(3), *Brown v. Apfel*, 192 F.3d 492, 495 n.1 (5th Cir. 1999), and 20 C.F.R. § 416.335).

Commissioner applies a five-step sequential process to determine disability status. *Id.* The claimant bears the burden of proof at the first four steps to establish that a disability exists. *Farr v. Astrue*, No. G-10-205, 2012 WL 6020061, at *2 (S.D. Tex. Nov. 30, 2012). The burden shifts to Commissioner at step five to show that

the claimant can perform other work. *Id.* The burden then shifts back to the claimant to rebut this finding. *Id.* If at any step in the process Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Id.*

## V.   COMMISSIONER IS ENTITLED TO SUMMARY JUDGMENT.

Plaintiff raises two issues related to whether the ALJ's RFC determination is supported by substantial evidence: (1) whether the ALJ failed to account for all of Plaintiff's medically determinable impairments; and (2) whether the ALJ failed to properly evaluate the medical opinion of Dr. Geo Anna Q. Hirshenbaum. ECF No. 17. Commissioner responds that the ALJ's RFC determination is supported by substantial evidence. ECF No. 21. The Court finds that the ALJ appropriately addressed Plaintiff's COPD[6] in his RFC determination and properly evaluated Dr. Hirshenbaum's medical opinion.

### A.    The ALJ's Step Two Findings Do Not Contradict the RFC.

Courts "have found that when impairments are identified as severe at step two but an RFC[7] does not include any limitations for those impairments, the RFC in

---

[6] "Chronic obstructive pulmonary disease, or COPD, refers to a group of diseases that cause airflow blockage and breathing-related problems. It includes emphysema and chronic bronchitis." *See* https://www.cdc.gov/copd/index.html#:~:text=Chronic%20obstructive%20pulmonary%20 disease%2C%20 or, includes%20emphysema%20and%20chronic%20bronchitis. (last visited January 16, 2024).

[7] "[T]he RFC is defined as the most that a person can still do despite recognized limitations." *Winston v. Berryhill*, No. 3:16-CV-419-BH, 2017 WL 1196861, at *13 (N.D. Tex. Mar. 31, 2017), *aff'd*, 755 F. App'x 395 (5th Cir. 2018) (citing 20 C.F.R. § 404.1545(a)(1) (2003)). "An individual's RFC should be based on all of the relevant evidence in the case record, including opinions submitted by treating physicians or other acceptable medical sources." *Id.* (citing 20

effect contradicts the step two finding," which "generally warrants remand." *Demetre G. v. Kijakazi*, No. 4:22-CV-2495, 2023 WL 6120614, at *4 (S.D. Tex. Sept. 15, 2023) (quoting *Winston*, 2017 WL 1196861, at *13 (citing 20 C.F.R. § 404.1545(a)(1) (2003)) (collecting cases)). "However, keeping in mind the differences between a Step Two severity finding and the RFC assessment, an ALJ 'does not err solely because [he or] she finds an impairment "severe" at step two but does not attribute any limitation to that impairment in assessing the claimant's RFC.'" *Id.* (quoting *Esser*, 2021 WL 9569834, at *5 (quoting *Sarah B. v. Berryhill*, No. 1:17-cv-0080-BL, 2018 WL 3763837, at *9 (N.D. Tex. June 29, 2018), *adopted*, No. 1:17-cv-080-C-BL, 2018 WL 3756944 (N.D. Tex. Aug. 8, 2018))); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

"[C]ourts require ALJs to provide an explanation as to why 'having identified an impairment as severe at Step Two, he did not incorporate specific limitations in the RFC based on that severe impairment.'" *Demetre G.*, 2023 WL 6120614, at *4 (quoting *Esser*, 2021 WL 9569834, at *5). "Such explanation should demonstrate that the ALJ[] considered the limitations that were encompassed by the severe impairments or accounted for the limitations in some respect." *Id.* at *2 (quoting *Esser*, 2022 WL 4596310 at *2 (quoting *Campbell v. Berryhill*, No. 3:15-CV-03913,

---

C.F.R. § 404.1545(a)(3) (2012); SSR 96-8p, 1996 WL 374184, at *1); *see also Esser v. Saul*, No. 2:21-CV-00045, 2021 WL 9569834, at *5 (S.D. Tex. Dec. 14, 2021), *adopted sub nom. Esser v. Kijkazi*, No. 2:21-CV-00045, 2022 WL 4596310 (S.D. Tex. Sept. 30, 2022).

2017 WL 1102797, at *11 (N.D. Tex. Feb. 24, 2017), *adopted*, No. 3:15-CV-03913, 2017 WL 1091651 (N.D. Tex. Mar. 23, 2017))).

At Step Two, the ALJ found Plaintiff's COPD to be a severe impairment. R. 21. The ALJ then assessed Plaintiff's RFC as "medium work as defined in 20 CFR [§§] 404.1567(c) and 416.967(c) except the claimant can understand, remember, and carry out simple instructions; can respond appropriately to supervision and coworkers, and usual work situations; and can deal with changes in a routine work setting." R. 23. The ALJ noted that "[i]n making this finding, [he] has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR [§§] 404.1529 and 416.929 and SSR 16-3p," and "also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR [§§] 404.1520c and 416.920c." R. 19.

In determining Plaintiff's RFC, the ALJ discussed Plaintiff's relevant medical records related to his COPD diagnosis. The ALJ stated that treatment notes from April 1, 2019, indicated a CT scan revealed inflammation and mild emphysema, and that the treating physician recommended a pulmonary evaluation. R. 24.[8] The ALJ

---

[8] Citing R. 529–30 (treatment records from visit to Good Samaritan Family Medicine on 4/1/2019, stating that Plaintiff reported "chest pain, nervous/anxious behavior, palpitations and shortness of breath," "chest CT shows changes suggesting inflammation and emphysema," and noted that

then recounted that treatment records nearly two years later on September 29, 2021

showed that Plaintiff sought treatment for shortness of breath—the notes indicated

that Plaintiff's lungs sounded clear, a CT-scan of Plaintiff's chest showed no acute

abnormality, and Plaintiff's pulse oximetry measured 99% in room air, which "is

suggestive of normal findings." R. 24.[9] The treating physician "*assumed*" Plaintiff's

shortness of breath was caused by COPD exacerbation and discharged Plaintiff in

stable condition with a short-term inhaler. R. 24.[10] After examining the two relevant

medical visits, the ALJ concluded that:

> A careful review of the treatment notes failed to reflect frequent
> exacerbation of COPD, persistent shortness of breath, fatigue,
> wheezing, rhonchi, or rales. He has had no frequent emergency room
> or hospitalization relating to COPD. [Plaintiff] does not even use
> medications regularly. I find that such treatment notes show that
> [Plaintiff] has mild symptoms of COPD, but they are not severe enough
> to prevent him from performing medium exertion work.

R. 24–25.

Plaintiff's medical records do not demonstrate that Plaintiff suffered any

---

Plaintiff has been to the ER "multiple times for chest pains, [shortness of breath] and palpitations,"
and "has been told it was anxiety").

[9] Citing R. 579–98 (treatment records from visit to the ER at HCA Houston Healthcare in Tomball
on 9/29/2021, stating that Plaintiff complained of shortness of breath that did not improve with the
use of his inhaler and thought he was experiencing a manic phase, Plaintiff's pulse oximetry was
99% and deemed normal, his respiratory exam showed rapid and shallow breathing with clear lung
sounds, and both his CT scan and x-ray of his chest yielded no acute abnormalities; treating
physician "*assume[d]* COPD exacerbation and anxiety as cause of his shortness of breath," and
discharged Plaintiff with directions to use his inhaler to help his breathing in the short-term)
(emphasis added).

[10] Citing R. 579–98 (treatment records from visit to the ER at HCA Houston Healthcare in Tomball
on 9/29/2021).

limitations related to his COPD that are otherwise not accounted for in the ALJ's RFC determination. The ALJ also reviewed each relevant medical opinion in the record, none of which found Plaintiff's COPD to be more limiting than the ALJ's RFC assessment. R. 27.[11] Further, the ALJ specifically noted that Plaintiff reported being unable to work due to his *bipolar disorder* and *PTSD*. R. 24. At the hearing before the ALJ, Plaintiff and his attorney never raised the issue of Plaintiff's COPD and focused instead on Plaintiff's mental limitations. R. 45–69. Finally, the ALJ's decision evaluated Plaintiff's daily activities, particularly his ability to continue to work odd jobs, and concluded that he did not lack physical ability to perform work activities. R. 26. In sum, none of the medical experts or records documented any breathing limitation, Plaintiff's daily activities did not demonstrate that he was impacted by any breathing limitations, and Plaintiff did not express any difficulty with breathing in his testimony at the hearing. The ALJ's RFC decision is supported by substantial evidence. *See Demetre G.*, 2023 WL 6120614, at *5 (citing *Sarah B.*, 2018 WL 3763837, at *9).

Although Plaintiff points to a few medical reports that show shortness of

---

[11] R. 78–94, 95–111 (initial disability determination from 4/22/2021 that Plaintiff's alleged limitations are not wholly supported by the evidence on record, specifically noting that Plaintiff's "functional limitations are less than marked," and finding only bipolar disorder to be a severe impairment and assessing only mental limitations); R. 115–22, 124–31 (reconsideration disability determination from 10/20/2021 finding only bipolar disorder to be a severe impairment and assessing only mental limitations).

breath (not specifically diagnoses of COPD exacerbation),[12] the ALJ is not required to discuss every piece of evidence in the record. *See Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005) ("That the ALJ did not specifically cite each and every piece of medical evidence considered does not establish an actual failure to consider the evidence.").[13] In sum, the ALJ's failure to include a COPD-specific limitation in his RFC determination was not error. *See Demetre G.*, 2023 WL 6120614, at *6 (citing *Esser*, 2022 WL 4596310, at *3 (citing *Winston*, 2017 WL 1196861, at *14) (finding no error where "the ALJ considered the medical impairments from step two when she made her RFC determination and assessed Plaintiff's limitations based on their impact on her actual ability to do work.")).

## B.    *The ALJ Properly Evaluated Dr. Hirshenbaum's Medical Opinion.*

The RFC determination is the "sole responsibility of the ALJ." *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012) (quoting *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1999)). When making the RFC determination, the ALJ must consider

---

[12] Plaintiff cites the above-mentioned September 29, 2021 visit to HCA Houston Healthcare, R. 579–98, and two visits on February 27, 2019 and March 29, 2019 to Good Samaritan Hospital. R. 412–26; 470–75. In both his February and March visits, Plaintiff reported shortness of breath— upon examination, the treating physician found normal effort and breath sounds, no respiratory distress, normal pulse oximetry readings, and diagnosed Plaintiff with a cough and shortness of breath. R. 412–26; 470–75. COPD is not mentioned in either visit.

[13] Plaintiff also argues that the ALJ mischaracterized the record evidence because the "probative medical evidence . . . does indeed reflect persistent shortness of breath as well as COPD exacerbation." ECF No. 18 at 11. The Court disagrees that the ALJ mischaracterized the record evidence. Only one of the cited medical records directly attributed Plaintiff's shortness of breath to his COPD, as opposed to his mental illness and illicit drug use.

all medical opinions contained in the record. 42 U.S.C. § 405(b)(1). The ALJ must "incorporate limitations into the RFC assessment that were most supported by the record." *Conner v. Saul*, No. 4:18-CV-657, 2020 WL4734995, at *8 (S.D. Tex. Aug 15, 2020) (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)). As an administrative factfinder, the ALJ is entitled to significant deference in deciding the appropriate weight to accord the various pieces of evidence in the record, including the credibility of medical experts and the weight to be accorded their opinions. *See Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).

For claims filed on or after March 27, 2017, like the instant case, the Social Security Administration requires ALJs to explain how they evaluate a medical opinion's persuasiveness. *See Johnson v. Kijakazi*, No. 4:20-CV-04271, 2022 WL 3588042, at *3 (S.D. Tex. Aug. 22, 2022) (citing *Shugart v. Kijakazi*, 2022 WL 912777, at *3 (S.D. Tex. Mar. 29, 2022) (citing 20 C.F.R. §§ 404.1520c, 416.920c)). "In evaluating persuasiveness, the ALJ considers five factors: (i) supportability; (ii) consistency; (iii) the source's relationship with the patient; (iv) the source's specialty; and (v) 'other factors that tend to support or contradict' the opinion." *Id.* (citing *Shugart*, 2022 WL 912777, at *3 (citing and quoting 20 C.F.R. § 404.1520c(c))). "Among those factors, the most important are supportability and consistency." *Id.* (citing *Shugart*, 2022 WL 912777, at *3 (citing § 404.1520c(c)(b) (2))).

"The supportability and consistency factors involve different analyses and require the ALJ to explain his reasoning for his persuasiveness finding with respect to each factor." *Rai R. v. Kijakazi*, No. 4:21-CV-2270, 2022 WL 4450487, at *4 (S.D. Tex. Sept. 23, 2022) (citing *Kilby v. Kijakazi*, No. 4:20-cv-03035, 2022 WL 1797043, at *3 (S.D. Tex. Mar. 15, 2022)). "With respect to 'supportability,' 'the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations *presented by the medical source* increase,' and consistency is 'an all-encompassing inquiry focused on how well a medical source is supported, or not supported, *by the entire record*.'" *Id.* (emphasis in original) (quoting *Luckett v. Kijakazi*, No. 4:20-CV-04002, 2021 WL 5545233, at *4 (S.D. Tex. Nov. 26, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1), 404.920c(c)(1)) (quoting *Vellone v. Saul*, 1:20-cv-00261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021)))).

"'[T]he ALJ's assessment and articulation of consistency and supportability must be read in full context of the RFC findings,' not in isolation." *Samuels v. Kijakazi*, No. 3:22-CV-00198, 2023 WL 2774460, at *5 (S.D. Tex. Apr. 4, 2023) (quoting *Teixeira v. Comm'r, SSA*, No. 421CV00003SDJCAN, 2022 WL 3130859, at *9 n.15 (E.D. Tex. July 12, 2022), *adopted*, No. 4:21-CV-3, 2022 WL 3107856 (E.D. Tex. Aug. 4, 2022)); *see also Gonzales v. Kijakazi*, No. 4:20-CV-00270, 2021 WL 3777181, at *3 (S.D. Tex. Aug. 3, 2021); *Ray v. Comm'r of Soc. Sec.*, No. 4:21-cv-1709, 2022 WL 3566844, at *4 (S.D. Tex. Aug. 17, 2022).

### 1.    *Dr. Hirshenbaum Provided a Medical Opinion.*

Dr. Hirshenbaum is a licensed psychologist who assessed Plaintiff's mental status for the purposes of his disability claim. Dr. Hirshenbaum interviewed Plaintiff, reviewed his medical records, and conducted a mental status examination. Dr. Hirshenbaum diagnosed Plaintiff with "major depressive disorder, recurrent, moderate," PTSD, and "unspecified anxiety disorder." [14] Plaintiff informed Dr. Hirshenbaum that he has suffered from depression and trauma-related symptoms for over thirty years and that his depression is improved when he takes his medication, but either because it affects him physically or he cannot afford it, he no longer takes his medication. [15] Plaintiff also stated that he lives alone on a campground and recently quit a job "because he felt like [they] were taking advantage of him."[16] In her examination of Plaintiff, Dr. Hirshenbaum noted that he "was very pleasant," "demonstrated concrete, goal-directed thinking," but poor abstract thinking, appeared to have his immediate and recent memory functions

---

[14] R. 514 (Dr. Hirshenbaum's Report, 4/9/2021).

[15] R. 510 (Dr. Hirshenbaum's Report, 4/9/2021).

[16] R. 511 (Dr. Hirshenbaum's Report, 4/9/2021).

intact,[17] had fair to normal concentration and attention,[18] and had fair judgment.[19]

Dr. Hirshenbaum opined that Plaintiff "can understand, carry out, and remember instructions only for one-two steps," "cannot sustain concentration and persist in work-related activity at a reasonable pace," "cannot maintain effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public, or deal with normal pressures in a competitive work setting."[20]

### 2.   The ALJ Properly Evaluated Dr. Hirshenbaum's Opinion.

After an extensive discussion of Plaintiff's symptoms, hearing testimony, and medical history, the ALJ summarized Dr. Hirshenbaum's opinion and found it to be unpersuasive because:

> it is inconsistent internally as the benign mental status examination findings, including pleasant and cooperative attitude, concrete thought process, goal-directed thinking, poor abstract thinking, dysphoric

---

[17] R. 513 (Dr. Hirshenbaum's Report, 4/9/2021, reported that "[w]hen asked to repeat and remember three objects, he was able to recall three out of three immediately and recalled two out of three after a five-minute interval," "reported the current president of the United States is 'Trump,'" "was able to repeat five digits forward and four digits backwards," and "was able to provide some details about his personal history.").

[18] R. 513 (Dr. Hirshenbaum's Report, 4/9/2021, reported that Plaintiff "was able to complete most simple arithmetic problems in his head and was unable to successfully subtract serial 7's. He was able to correctly spell the word 'world' forwards and backwards.").

[19] R. 513 (Dr. Hirshenbaum's Report, 4/9/2021, reported that "[w]hen asked, 'What would you do if you found a sealed, stamped and addressed envelope?' [Plaintiff] replied, 'I would pick it up and give it back,'" and "[w]hen asked what he would do if []he saw a neighbor's house on fire, he replied, 'call 911.'").

[20] R. 514 (Dr. Hirshenbaum's Report, 4/9/2021).

mood, [21] congruent affect, clear sensorium, average fund of information, fair to normal attention and concentration, fair insight and judgment, and intact memory, support greater functional abilities than the examiner suggested. The opinion is also inconsistent with the claimant's substantial daily activities . . . as well as lack of regular mental health treatment. The fact that the claimant worked various jobs in the last two years, reported performing odd jobs, and can drive a car shows that he is capable of performing one to two step tasks despite the examiner's opinion.

R. 27. Prior to evaluating Dr. Hirshenbaum's opinion in his written decision, the ALJ meticulously analyzed the results of Dr. Hirshenbaum's assessment of Plaintiff and other medical records related to Plaintiff's purported mental limitations. R. 25.

Reading the entirety of the ALJ's decision, the ALJ properly evaluated Dr. Hirshenbaum's opinion. As shown above, the ALJ utilized the consistency and supportability factors to explain why he found Dr. Hirshenbaum's opinion unpersuasive. R. 27. He first noted the ways in which he found Dr. Hirshenbaum's opinion internally inconsistent, specifically inconsistent with her observations of Plaintiff's demeanor and performance. R. 27. The ALJ detailed Dr. Hirshenbaum's benign mental status examination findings, concluding that they support greater functional abilities than she suggested. R. 27. This analysis is precisely what the

---

[21] Dysphoric mood is a "mental state in which a person has a profound sense of unease or dissatisfaction. While not a mental health diagnosis on its own, dysphoria is a symptom associated with a variety of mental illnesses," including anxiety and depression. https://www.verywellmind.com/what-is-dysphoria-4588634. (last visited 2/27/24). The Court does not agree that this symptom supports the ALJ's conclusion that Dr. Hirshenbaum's findings suggested a "benign mental status examination."

consistency factor addresses. *See Rai R.*, 2022 WL 4450487, at *4.

The ALJ next evaluated Dr. Hirshenbaum's opinion considering the entire record. R. 27. The ALJ explained that Dr. Hirshenbaum's opinion was inconsistent with claimant's daily activities, lack of regular mental health treatment, ability to continue working, and drive, which shows that he can perform one to two step tasks. R. 27. Prior to addressing Dr. Hirshenbaum's opinion, the ALJ detailed Plaintiff's medical history and noted the lack of mental health treatment in Plaintiff's past: "[t]he objective findings do not reflect significant deficits in concentration, persistence, and pace as well as social interaction. . . . [Plaintiff] testified to having adverse effects of medications, but I note that [Plaintiff] has not been receiving regular mental health and physical treatment for the last three years and that the record fails to reflect persistent side effects of medications." R. 24. The ALJ observed that in prior psychological examinations, including Dr. Hirshenbaum's, Plaintiff showed normal mood and affect. R. 25. The ALJ also mentioned that Plaintiff has "had no more than a couple of treatment visits in the last 2 ½ years," and scrutinized both visits.[22] R. 25–26. Moreover, the ALJ assessed Plaintiff's daily

---

[22] The ALJ summarized Plaintiff's September 28, 2021 treatment as follows:

> treatment notes indicate that [Plaintiff] sought mental health due to manic episode. At the time, he reported that he felt homicidal when his fiancé cheated on him, which shows that he is an individual who can establish relationships despite his testimony of severe social withdrawal. . . . He admitted to doing odd jobs to support himself, which shows that [Plaintiff] has continued to work despite his allegations of inability to work as of September 2019. . . . However, these treatment notes did not document significant objective limitations despite [Plaintiff]'s self-reported

routines and habits, noting that Plaintiff had worked various odd jobs on and off for the past three years and "ha[d] been able to work and manage his life independently." R. 26. This analysis is precisely what the supportability factor addresses. *See Claudio v. Comm'r of Soc. Sec.*, No. 4:23-CV-108-BP, 2023 WL 4748218, at *6 (N.D. Tex. July 25, 2023) (finding no error with ALJ's assessment of medical opinion as unpersuasive based on the plaintiff's daily activities and conservative treatment history).

By considering how Dr. Hirshenbaum's assessment of Plaintiff's limitations in concentration, following instructions, and interaction was unsupported by and inconsistent with the consultative examination, the treatment record, and Plaintiff's daily routines, the ALJ discussed the supportability and consistency of Dr. Hirshenbaum's opinion. *See Lara v. Kijakazi*, No. 3:21-CV-1032-L-BH, 2022 WL 4486085, at *17 (N.D. Tex. Aug. 29, 2022), *adopted*, No. 3:21-CV-1032-L-BH,

---

significant history of mental impairments.

R. 25 (citing R. 557–76 (Office Treatment Records, dated 09/28/2021 to 09/28/2021, from Tri-County Behavioral Health – Conroe)).

With regard to his March 22, 2022 treatment, the ALJ commented that:

> treatment notes also reflect a remote history of psychiatric hospitalization and traumatic events. . . . The March 2022 mental status examination showed suspicious attitude, well-groomed appearance, restless motor activity, anxious mood, constricted affect, spontaneous speech, focused thought process, normal orientation, impaired recent concentration, intact insight, and good judgment. Thought process was circumstantial but was redirectable. He was noted to have no hallucinations.

R. 26 (citing R. 606–58 (Office Treatment Records, dated 03/07/2022 to 03/22/2022, from Tri-County Behavioral Health – Conroe)).

2022 WL 4485826 (N.D. Tex. Sept. 27, 2022) (citing *Dominick S.*, 2022 WL 2874705, at *4 (finding ALJ satisfied the required discussion because his "narrative explanation" described plaintiff's moderate mental limitation as supported by and consistent with plaintiff's own reports, other evidence of his poor ability to concentrate and focus, "essentially normal mental status examinations" and similar SAMC opinions); *Raymond S. v. Kijakazi*, No. 3:20-CV-01773-N-BT, 2021 WL 6335203, at *4-5 (N.D. Tex. Dec. 7, 2021), *adopted*, No. 3:20-CV-01773-N-BT, 2022 WL 79845 (N.D. Tex. Jan. 7, 2022) (finding the ALJ committed no error in not giving [consultative examiner]'s opinion more weight because its findings were not consistent with the record even if the opinion was supported by observations during her evaluation))).[23]

Accordingly, Plaintiff has failed to demonstrate that the decision of the ALJ should be disturbed.

## V.   CONCLUSION

Therefore, it is **ORDERED** that Plaintiff's motion for summary judgment,

---

[23] In essence, Plaintiff's arguments related to this point of error ask the Court to reweigh the evidence, which it cannot do. *See Donald S. v. Kijakazi*, No. 1:22-CV-00076-BU, 2023 WL 2064717, at *7 (N.D. Tex. Feb. 16, 2023) ("Plaintiff's recitation of Dr. Holly's report seeking to show the ways in which it was detailed and supported by the record, is an attempt to have the Court erroneously reweigh the evidence."). In fact, the ALJ was only required to explain why he found Dr. Hirshenbaum's opinion inconsistent and unsupported, which he did.; *Kraft v. Kijakazi*, No. CV 20-2687, 2021 WL 6689777, at *12 (E.D. La. Oct. 26, 2021), *adopted sub nom. Kraft v. Saul*, No. CV 20-2687, 2022 WL 204569 (E.D. La. Jan. 24, 2022) ("even where other conclusions are possible, the ALJ's decision must be upheld where it is supported by substantial evidence.").

ECF No. 17, is **DENIED**. Commissioner's motion for summary judgment, ECF

No. 21, is **GRANTED**. The ALJ's decision denying benefits is **AFFIRMED**.

Signed at Houston, Texas, on February 27, 2024.

_____

**Dena Hanovice Palermo**
**United States Magistrate Judge**